**FILED**

AUG 24 2016

~~CLERK~~

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| ROQUE "ROCKY" DE LA FUENTE | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | No. 16-3035 |
| v. | : | |
| | : | |
| SHANTEL KREBS; in her official capacity as | : | |
| the Secretary of State of the State of South | : | |
| Dakota; and, KEA WARNE, in her official | : | |
| as capacity the Deputy Secretary of State, | : | |
| Election Services, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF

1.      Plaintiff, ROQUE "ROCKY" DE LA FUENTE files this civil action for prospective equitable relief against defendants, SHANTEL KREBS, in her official capacity as the Secretary of State for South Dakota, and KEA WARNE, in her official capacity as Deputy Secretary of State of South Dakota, Elections Services, requesting emergency preliminary and permanent injunctions and declaratory relief prohibiting defendants from enforcing a nomination petition signature requirements for independent candidates for President of the United States that impair "core political speech" protected under the First and Fourteenth Amendments to the United States Constitution, and ordering defendants to accept the itemized signatures recorded on plaintiff's nomination petitions that were originally invalidated by defendants in violation of

plaintiff's First Amendment rights, thereby placing him on the ballot for the 2016 general election as an independent candidate for President of the United States.

## NATURE OF THE COMPLAINT

2.    This is an action to enforce rights guaranteed to plaintiff under the First and Fourteenth Amendments to the United States Constitution.

3.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983, seeking prospective equitable relief for emergency injunctive and permanent injunctive and declaratory relief that certain requirements imposed on nomination petition signatures under South Dakota election laws SDCL §§12-1-35; 12-6-8 and rules promulgated and enforced by defendants in the circulating of a nominating petition, as applied to presidential candidates in general elections, violate clearly established rights guaranteed to plaintiff under the First and Fourteenth Amendments to the United States Constitution.

4.    Plaintiff asks this Court for emergency relief ordering defendants to validate the signatures, itemized in this complaint, and previously rejected as invalid based on the challenged requirements that plaintiff allege impair rights guaranteed to plaintiff under the First and Fourteenth Amendments to the United States Constitution.

5.    Specifically, plaintiff asks this court to declare unconstitutional, as applied to otherwise valid signatures recorded on nominating petitions circulated and filed on behalf of candidates for President and Vice-President of the United States, the following

provisions: (1) SDCL §12-1-35 to the extent that it requires otherwise qualified signers of nominating petitions to record the county in which they are registered to vote; (2) SDCL § 12-6-8 to the extent that it invalidates entire pages of otherwise valid signatures recorded on nominating petitions by requiring each petition page to be "verified under oath by the person circulating the petition" and to the extent a mistake by a notary is not allowed to be amended after filing by defendants; and (3) SDCL § 12-1-35 and defendants' enforcement of rules prohibiting notarized photocopies of nominating petition pages from being filed without the original petition page attached to nominating petitions filed with defendants.

6.     All of plaintiffs' foregoing allegations are based upon information and belief.

## JURISDICTION

7.     Jurisdiction lies in this Court under 28 U.S.C. § 1331, providing that district courts shall have original jurisdiction of all civil actions arising under the Constitution of the United States.

8.     Moreover, jurisdiction lies under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983 as plaintiff alleges violation of rights guaranteed to them under the First Amendment, as applied to the states by the Fourteenth Amendment to the United States Constitution.

## VENUE

9.      Venue is proper in the United States District Court for the District of South Dakota under 28 U.S.C. § 1391 as defendants exercise their authority within the district and maintain their primary offices within this district and all of the operative acts or omissions have or will occur in this district.

## PARTIES

10.      Plaintiff, Roque De La Fuente, is an independent candidate for President of the United States in the 2016 general election.  Plaintiff is a resident of the State of Florida residing at 625 West Winter Park Street, Orlando, Florida, 32804.

11.      Defendant, Shantel Krebs, is the South Dakota Secretary of State. Defendant is the supervisor and chief election official for the State of South Dakota and charged with enforcement of the States election laws.  Defendant's place of business is located at 500 East Capitol Avenue, Room 204, Pierre, South Dakota 57501.

12.      Defendant, Kea Warne, is the South Dakota Deputy Secretary of State for Elections Services.  Defendant is charged with enforcement of the States election laws. Defendant's place of business is located at 500 East Capitol Avenue, Room 204, Pierre, South Dakota 57501.

## FACTUAL ALLEGATIONS

13.      Plaintiff is an independent candidate for the office of President of the United States in the 2016 general election.

14. Plaintiff meets all constitutional requirements to be a candidate for President of the United States.

15. Plaintiff attempted to access the South Dakota ballot for the 2016 general election using South Dakota's petition procedure for independent candidates. General authority for this procedure is prescribed in SDCL §12-1-9(6).

16. SDCL §12-7-7 specifies the deadline for submittal of petitions containing the required valid signatures:

> A candidate may be nominated by filing with the secretary of state, not prior to January first at 8:00 a.m. and not later than the first Tuesday in August at 5:00 p.m. prior to the election, a certificate of nomination which shall be executed as provided in chapter 12-6.

17. SDCL §12-1-36 specifies that a random sample of signatures may be used for verification purposes:

> The secretary of state shall verify the signatures received pursuant to § 12-1-35 by random sampling. The random sample of signatures to be verified shall be drawn so that each signature received by the secretary of state is given an equal opportunity to be included in the sample. The secretary of state shall calculate the number of valid signatures by multiplying the total number of signatures received by the percentage of successfully verified signatures from the random sample. The secretary of state shall promulgate rules, pursuant to chapter 1-26, establishing the methodology for conducting the random sample. The random sampling shall be an examination of five percent of the signatures received.

18. SDCL §12-1-37 indicates the random sample can be used to make a final decision regarding certifying or not certifying a candidate for general election:

> If the random sample required by § 12-1-36 indicates that a sufficient number of qualified electors have signed the nominating petition for statewide office, the secretary of state shall certify that the nominating petition for statewide

office has been signed by the required number of qualified electors and shall place the candidate's name on the next primary or general election ballot, as the case may be.

If the random sample indicates that an insufficient number of qualified electors have signed the nominating petition for statewide office, the secretary of state shall certify that the nominating petition for statewide office has not been signed by the required number of qualified electors and may not place the candidate's name on the next primary or general election ballot, as the case may be.

The secretary of state shall, within five days of certifying, notify the candidate of the secretary of state's action pursuant to this section.

19.    For the 2016 presidential election, the minimum number of required valid signatures were 2,774.

20.    Plaintiff submitted a total of 4,144 signatures by the deadline.

21.    Defendant(s) examined a 5% sample taken of plaintiff's nomination petitions or 208 signatures.

22.    Of the 208 signatures reviewed from 4,144 total number of signatures submitted, 81 were judged to be invalid for a validity rate of 61.0577% resulting in a statistically suspect 2,530 valid signatures, 244 short of the 2,774 required signatures.

23.    On August 12, 2016, defendant Krebs sent a letter to plaintiff rejecting the nomination petitions:

Dear Mr. De La Fuente:

I am sorry to inform you that we were not able to file your nominating petitions for Independent Candidate for President.

You were required to submit 2.774 valid signatures by the filing deadline of August 2, 2016 per SDCL 12-7-7. After conducting the 5% random sample

in accordance with SDCL 12-1-36, your percent of valid signatures was 61.0577%. Out of the 4144 signatures submitted, only 2530 were valid since you did not have enough valid signatures, our office was unable to accept them and they cannot be filed.

You will not be certified as a candidate on the 2016 General Election ballot. If you have further questions, please feel free to contact me.

Shantel Krebs
Secretary of State

24.    On August 16, 2016, Plaintiff dispatched an agent to defendant's office to review the 5% sample taken and the results of the validation process of the nomination petitions that were timely filed.

25.    Of the 81 signatures judged invalid, 8 signatures were held to be invalid solely as a result of an invalid affidavit pursuant to SDCL § 12-6-8: 5 because the notary's commission had alleged to have expired at the time she notarized the petition pages and 3 because one of the affidavits was found to be incomplete.  The signatures within the 5% sample invalidated are found at: Sort Sheet #176, Signatures #1, #3, & #8; Sort Sheet #261, Signatures #2 & #4; Sort Sheet #262, Signatures #13 & #16; and Sort Sheet #264, Signature #4.

26.    Defendant Warne explained that defective affidavits, unlike most other states, are not amendable defects after that have been filed with defendants.

27.    Each notarization of a nominating petition page typically costs, at minimum, $5.00 per notarization.

28.     The notarization requirement constitutes an unconstitutional filing fee of nominating petitions.

29.     Of the 81 signatures judge invalid, 3 signatures were held to be invalid because elections staff determined the petition page submitted was a copy of the original even though the page submitted was the petition page actually notarized in apparent violation of "Rule #17" of the instructions for "Circulating a Nominating Petition" published by defendants and attached hereto as "Exhibit A" to the this Complaint. The signatures within the 5% sample invalidated are found at: Sort Sheet #269, Signature #2; and Sort Sheet #272, Signatures # 1 & #2.

30.     Of the 81 signatures found invalid, 7 signatures of registered voters were invalidated because they simply recorded the wrong county in which they registered to vote in violation of SDCL § 12-1-35. The signatures within the 5% sample invalidated are found at:(Sort Sheet #60, Signature #4; Sort Sheet #81, Signature #5; Sort Sheet #121, Signature #4;Sort Sheet #127, Signature #17; Sort Sheet #189, Signature #17; Sort Sheet #196, Signature #3; Sort Sheet #197, Signature #5.

31.     Since passage of the National Voter Registration Act, the State of South Dakota is required, and does in fact, maintain a centralized searchable database of all voters registrations within the State of South Dakota.

32.     As a direct and proximate result of the National Voter Registration Act, defendants' validation of nominating petition signatures no longer require defendants to

be send petition pages to the individual county where the voter's registration records are maintained.

33.     Accordingly, the requirement that an otherwise qualified voter correctly record the county in which they are registered to vote on nominating petitions no longer serves any governmental interest, let alone a compelling governmental interest, sufficient to strike otherwise valid core political speech from plaintiff's nominating petitions.

34.     Accordingly, plaintiff alleges that 18 of the 81 signatures judge invalid as part of the 5% sample were judge invalid based on overly restrictive and unconstitutional state election laws as applied to candidates for the Offices of President and Vice-President of the United States.

35.     If 12 of the 81 signatures judged invalid within the 5% sample are held to be subject to unconstitutionally restrictive state election laws as applied to candidates for the Offices of President and Vice-President of the United States,

36.     Defendant's enforcement of state election laws SDCL §§12-1-35; 12-6-8 and rules prohibiting notarized photocopies from being filed, as applied to candidates for the Offices of President and Vice-President of the United States, severely impair rights guaranteed to plaintiff under the First and Fourteenth Amendments to the United States Constitution.

37.     Plaintiff has no other adequate remedy at law.

## COUNT I
**(SDCL §12-1-35, As Applied to Candidates for President and Vice-President of the United States, Impair Political Speech in Violation of the First Amendment to the United States Constitution)**

38.    Plaintiff reasserts each preceding allegation as if set forth fully herein.

39.    The Supreme Court has established that signatures recorded on election petitions constitute core political speech afforded the highest protections under the First Amendment to the United States Constitution.

40.    Severe restrictions on political speech which are not narrowly tailored to serve a compelling governmental interest are invalid under the First Amendment to the United States Constitution.

41.    Supreme Court case law also makes it clear that individual states have a minimal interest in imposing unnecessary and overly restrictive state election laws regulating ballot access for candidates for the Offices of President and Vice-President of the United States because individual states do not retain a compelling interest in having their own local election laws greatly impacting a national election.

42.    Defendants' enforcement of SDCL §12-1-35 striking any otherwise valid signature recorded on plaintiff's nominating petitions for failure of the otherwise qualified signer to pass a "memory test" by correctly recording the county in which he/she is registered to vote on the nominating petition is an unconstitutionally restrictive impairment of core political speech, as applied to nominating petitions for the Offices of President and Vice-President of the United States, in violation of the First and

Fourteenth Amendments to the United States Constitution, for which plaintiff requests relief.

## COUNT II
**(SDCL §12-6-8, As Applied to Candidates for President and Vice-President of the United States, Impair Political Speech in Violation of the First Amendment to the United States Constitution)**

43.    Plaintiff reasserts each preceding allegation as if set forth fully herein.

44.    The State of South Dakota does not have a compelling governmental interest in requiring that each page of a nominating petition circulated by a circulator must be individually and perfectly notarized before filing.

45.    Any interest advanced by defendants on behalf of the State of South Dakota in support of SDCL § 12-6-8 is fully satisfied by a single notarization for each circulator circulating plaintiff's nominating petitions.

46.    Defendants' enforcement of SDCL § 12-6-8 constitutes an unconstitutional filing fee for nominating petitions in violation of the First and Fourteenth Amendments for which plaintiff seeks relief.

47.    Defendants' enforcement of SDCL § 12-6-8 that each and every nominating petition page be individually and perfectly notarized is not narrowly tailored to advance a compelling governmental or legitimate regulatory interest.

48.    Defendants' enforcement of SDCL § 12-6-8 striking otherwise valid signatures recorded on plaintiff's nominating petitions for the failure of a perfect notarization of each page of plaintiff's nominating petitions constitutes a severe

impairment of core political speech where defendants do not allow allegedly defective affidavits to be cured, amended or corrected by a subsequent filing in violation of the First and Fourteenth Amendments of the United States Constitution as applied to nominating petitions filed on behalf of candidates for the Offices of President and Vice-President of the United States for which plaintiff requests relief.

## COUNT III
**(Defendants' Enforcement of SDCL §12-1-35 and Rules Prohibiting the Filing of Notarized Photocopies of Nominating Petition Pages, As Applied to Candidates for President and Vice-President of the United States, Impair Political Speech in Violation of the First Amendment to the United States Constitution)**

49.    Plaintiff reasserts each preceding allegation as if set forth fully herein.

50.    Defendants' enforcement of SDCL §12-1-35 in combination with "Rule 17" of the instructions for "Circulating A Nominating Petition" attached to and made part of this Complaint as "Exhibit A" prohibiting the filing of notarized copies of nominating petition pages, as applied to candidates for the Offices of President and Vice-President of the United States, is a severe impairment of core political speech which is not narrowly tailored to advance a compelling governmental or regulatory interest in violation of rights guaranteed to plaintiff under the First and Fourteenth Amendments to the United States Constitution, for which plaintiff requests relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.      Preliminarily and permanently enjoin defendants' enforcement of SDCL § 12-1-35 to the extent that it requires signers of nominating petitions for the Offices of President and Vice-President of the United States to correctly record the county in which they are registered to vote;

b.      Preliminarily and permanently enjoin defendants' enforcement of SDCL § 12-6-8 to the extent that it requires each and every nominating petition page to be individually and perfectly notarized, without the opportunity for subsequent amendment if found defective, for nominating petitions for the Offices of President and Vice-President of the United States;

c.      Preliminarily and permanently enjoin defendants' enforcement of "Rule #17" contained in the instructions "Circulating A Nominating Petition" and SDCL § 12-1-35 to the extent that they prohibit the filing of a notarized photocopy of a nominating petition page, with the original being attached to the filing submitted to defendants.

d.      Declare unconstitutional defendants' enforcement of SDCL § 12-1-35 to the extent that it requires signers of nominating petitions for the Offices of President and Vice-President of the United States to correctly record the county in which they are registered to vote;

e.      Declare unconstitutional defendants' enforcement of SDCL § 12-6-8 to the extent that it requires each and every nominating petition page to be individually and perfectly notarized, without the opportunity for subsequent amendment if found

defective, for nominating petitions for the Offices of President and Vice-President of the United States;

f.      Declare unconstitutional defendants' enforcement of "Rule #17" contained in the instructions "Circulating A Nominating Petition" and SDCL § 12-1-35 to the extent that they prohibit the filing of a notarized photocopy of a nominating petition page, with the original being attached to the filing submitted to defendants;

g.      Award plaintiff the cost of this action together with his reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988; and

h.      Retain jurisdiction of this action and grant plaintiff such other relief which may in the determination of this Honorable Court to be necessary and proper.

Respectfully submitted this 24th day of August, 2016.

DAMON LAW OFFICE

Jamie L. Damon
Attorney for Plaintiff
PO Box 1115
Pierre, SD 57501
(605) 224-6281
dlo@midconetwork.com